UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ARAM MKRTCHYAN,

          Plaintiff,

      v.

CAROLYN COLVIN,

          Defendant.

CASE NO. C14-1209JLR

ORDER

## I.   INTRODUCTION

Plaintiff Aram Mkrtchyan appeals the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), which granted in part his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, after a hearing before an Administrative Law Judge ("ALJ").  Specifically, Mr. Mkrtchyan appeals the Commissioner's determination that he was disabled as of May 1, 2012, rather than as of February 1, 2011.

ORDER- 1

Having considered the parties' briefs, the administrative record ("AR"), and the relevant law, and being fully advised, the court REVERSES the Commissioner's final decision and REMANDS this action to the Commissioner for further administrative proceedings.

## II.    BACKGROUND

The facts of the case are set forth in the ALJ's decision (AR (Dkt. # 15) at 18-29), the administrative hearing transcript (AR at 36-74), and the briefs of the parties (Op. Brief (Dkt. # 17); Resp. (Dkt. # 18); Reply (Dkt. # 19)).  They are only briefly summarized here.

Mr. Mkrtchyan filed applications for DIB and SSI on March 14 and 16, 2011, respectively.  (AR at 18.)  He alleged disability beginning February 1, 2011, primarily as a result of chronic back pain and a variety of mental health problems.  (AR at 18, 21, 24, 247-48.)  The Social Security Administration denied his application initially and on reconsideration.  (AR at 18.)  Mr. Mkrtchyan filed a request for hearing, and a hearing was held before an ALJ on August 16, 2012.  (AR at 18, 29.)  In a written decision dated March 18, 2013, the ALJ granted in part and denied in part Mr. Mkrtchyan's claim.  (AR at 29.)  The Social Security Administration's Appeals Council denied Mr. Mkrtchyan's request for review on May 29, 2014. (AR at 1-6.)  This appeal followed.  (*See* Compl. (Dkt. # 3).)

In rendering his written decision, the ALJ followed the Social Security Administration's five-step sequential process for determining whether a person is

//

//

1   disabled.[1]  At step one, the ALJ found that Mr. Mkrtchyan had not engaged in substantial

2   gainful activity ("SGA") since the alleged onset date of his disability.  (AR at 20.)  At

3   step two, he found that since the alleged onset date Mr. Mkrtchyan has had the severe

4   impairments of lumbar degenerative disc disease, left knee degenerative joint disease,

5   anxiety disorder, affective disorder, and alcohol and marijuana abuse.  (AR at 21.)  At

6   step three, the ALJ concluded that Mr. Mkrtchyan has not had an impairment or

7   combination of impairments that meets or medically equals the severity of the

8   impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2]  (AR at 22.)

9        At step four, the ALJ determined that prior to May 1, 2012, Mr. Mkrtchyan had

10   the residual functional capacity ("RFC") to perform light work, provided he undertook

11   only simple, repetitive tasks, had no contact with the general public, and had only

12   occasional contact with supervisors and coworkers.  (AR at 23.)  In reaching this

13   determination, the ALJ found that Mr. Mkrtchyan's "medically determinable

---

15      [1] *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001) (listing the five

16   steps).  In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.

17   1999).  This burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.  20 C.F.R. §§ 404.1520(a)(4),

18   416.920(a)(4).  If a claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which the claimant can perform.

19   *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).  If a claimant cannot make an adjustment to other work in the national economy, the claimant is "disabled."  20

20   C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).

21      [2] If the claimant's severe impairments "meet or equal" one or more of the listed impairments, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii),

22   416.920(a)(4)(iii).  The ALJ found that that was not the case here, however, so he proceeded to step four in the five-part sequential process.

ORDER- 3

1  impairments could possibly cause the alleged symptoms." (AR at 24.) Turning to the

2  severity and limiting effects of those symptoms, however, the ALJ found Mr.

3  Mkrtchyan's claims "not entirely credible." (*Id.*) The ALJ instead determined that the

4  "objective medical evidence shows that the claimant's physical impairments cause some

5  functional limitations but are not disabling." (*Id.*) In light of this conclusion, the ALJ

6  found that up to May 1, 2012, Mr. Mkrtchyan could perform his past relevant work as a

7  gluer and was therefore not disabled. (AR at 27-28.)

8      The ALJ nevertheless concluded that as of May 1, 2012, Mr. Mkrtchyan had only

9  the RFC to perform sedentary work with the same limitations on type of task and contact

10  with others. (AR at 27.) The ALJ further found that such an RFC precluded Mr.

11  Mkrtchyan from performing any of his past relevant work, and that Mr. Mkrtchyan could

12  not adjust to other jobs within that RFC. (AR at 28.) As such, the ALJ determined that

13  Mr. Mkrtchyan could not perform any jobs that exist in significant numbers in the

14  national economy and was therefore disabled as of May 1, 2012. (*Id.*) Finally, the ALJ

15  found that substance abuse was not a contributing factor material to the determination of

16  Mr. Mkrtchyan's disability. (AR at 29.)

17     After the Social Security Administration's Appeals Council declined review (AR

18  at 1), the ALJ's determination became the final decision of the Commissioner. Mr.

19  Mkrtchyan now asks this court to review the Commissioner's decision pursuant to 42

20  U.S.C. §§ 405(g) and 1383(c)(3). (Compl. at 3.)

21

22

### III.   ANALYSIS

**A.   Standard of Review**

Under 42 U.S.C. § 405(g), the court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014); *see also* 42 U.S.C. § 1383(c)(3). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). The court must review the "record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* (internal citations and quotations marks omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A court cannot substitute its judgment for that of the ALJ, *Garrison*, 759 F.3d at 1010 (citing *Andrews*, 53 F.3d at 1039), and will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation, *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.* (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

**B.   Mr. Mkrtchyan's Arguments**

Mr. Mkrtchyan asks the court to reverse the determination of the ALJ for two reasons. First, Mr. Mkrtchyan argues that the ALJ erred in evaluating his credibility.

1    (Op. Brief at 3-12.)  Second, he contends that the ALJ incorrectly evaluated the opinion

2    of his treating physician, Dr. Jacob Grinberg, M.D.  (*Id.* at 12-14.)  The court will address

3    each assignment of error in turn.

4         1.  Mr. Mkrtchyan's credibility

5         Mr. Mkrtchyan complains that the ALJ erred in finding not credible his subjective

6    claims regarding the severity and limiting effects of his physical symptoms.  Before

7    concluding that a claimant's subjective pain or symptom testimony is not credible, an

8    ALJ must make two determinations:  "First, the ALJ must determine whether the

9    claimant has presented objective medical evidence of an underlying impairment which

10   could reasonably be expected to produce the pain or other symptoms alleged." *Treichler*

11   *v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting

12   *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted).  "Second, if the

13   claimant has produced that evidence, and the ALJ has not determined that the claimant is

14   malingering, the ALJ must provide 'specific, clear and convincing reasons for' rejecting

15   the claimant's testimony regarding the severity of the claimant's symptoms." *Id.*

16   (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).  "'The ALJ must

17   specifically identify what testimony is credible and what testimony undermines the

18   claimant's complaints.'" *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001)

19   (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)).

20        On the first issue, the ALJ found that Mr. Mkrtchyan's medically determinable

21   impairments could reasonably be expected to produce his symptoms.  (*See* AR at 24.)

22   The ALJ did not make a finding of malingering.  Turning to the second issue, however,

1   the ALJ declared that "the claimant's statements concerning the intensity, persistence and

2   limiting effects of these symptoms are not entirely credible prior to May 1, 2012." (*Id.*)

3   The ALJ's reasons for rejecting Mr. Mkrtchyan's testimony regarding his physical

4   symptoms can be divided into three categories:  (1) inconsistency with own statements;

5   (2) inconsistency with demonstrated abilities and activities; and (3) inconsistency with

6   medical evidence.  (*See* AR at 24-26.)  The court addresses each in turn.

7           Regarding Mr. Mkrtchyan's inconsistent statements, the ALJ noted that during a

8   February 2, 2011, examination with Dr. Grinberg, Mr. Mkrtchyan described his back pain

9   as constant and moderate with occasionally severe stabbing pain.  (AR at 24 (citing *id.* at

10  343).)  A claimant's inconsistent statements about his symptoms may afford a clear and

11  convincing reason for finding his testimony regarding those symptoms not credible.

12  *Chaudry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quoting *Tommasetti v. Astrue*, 533

13  F.3d 1035, 1039 (9th Cir. 2008)) ("'The ALJ may consider many factors in weighing a

14  claimant's credibility, including . . . the claimant's . . . prior inconsistent statements

15  concerning the symptoms . . . .'").  The examination notes that the ALJ cites, however,

16  are not substantial evidence in support of such an inconsistency, *see id.*, because they are

17  not actually inconsistent with Mr. Mrktchyan's statements.

18          To begin, the ALJ cites to no part in the record, and the court could locate none, in

19  which Mr. Mkrtchyan describes his back pain in a manner that is directly inconsistent

20  with the treatment notes from February 2, 2011.  Mr. Mkrtchyan does not appear to have

21  later stated, for example, that in February 2011 his pain was constantly severe.  Thus, the

22  ALJ's opinion implies that the inconsistency is between Mr. Mrktchyan's statements on

Februrary 2, 2011, and his claim of disabling back pain.  (*See* AR at 24.)  Yet the ALJ

does not explain how constantly moderate and occasionally severe stabbing back pain is

inconsistent with that claim.  (*See id.*)  Moreover, the ALJ does not mention the next

sentence of the February 2, 2011, treatment notes which states, "Any physical activity or

sneezing makes symptoms much worse."  (AR at 343.)  Thus, the court concludes that the

ALJ's assertion of an inconsistent statement is not supported by substantial evidence.  *See*

*Chaudry*, 688 F.3d at 672.

       In addition, the ALJ opined that Mr. Mkrtchyan's demonstrated abilities and

activities are inconsistent with his claim of disability beginning on February 1, 2011.

(*See* AR at 25-26.)  It is well established that the nature of daily activities may be

considered when evaluating credibility.  *See Burch*, 400 F.3d at 680; *Smolen*, 80 F.3d at

1284; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  Indeed, non-work activities that

are inconsistent with a claim of total disability will undermine the claimant's credibility.

*Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009); *see also*

*Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (finding that the claimant's daily

activities of caring for two young children and other household chores undermined her

claims of total disability).

       The Ninth Circuit, however, has "repeatedly warned that ALJs must be especially

cautious in concluding that daily activities are inconsistent with testimony about pain,

because impairments that would unquestionably preclude work and all the pressures of a

workplace environment will often be consistent with doing more than merely resting in

bed all day."  *Garrison*, 759 F.3d at 1016 (citing *Smolen*, 80 F.3d at 1287 n.7).  Courts

have "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily
activities, such as grocery shopping, driving a car, or limited walking for exercise, does
not in any way detract from her credibility as to her overall disability." *Vertigan*, 260
F.3d at 1050 (citing *Fair*, 885 F.2d at 603).  "The Social Security Act does not require
that claimants be utterly incapacitated to be eligible for benefits, . . . and many home
activities may not be easily transferable to a work environment where it might be
impossible to rest periodically or take medication." *Fair*, 885 F.2d at 603 (internal
citations omitted).  The law recognizes that "disability claimants should not be penalized
for attempting to lead normal lives in the face of their limitations." *Garrison*, 759 F.3d at
1016 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)); *see also Cooper v.
Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) ("Disability does not mean that a claimant
must vegetate in a dark room excluded from all forms of human and social activity."
(quoting *Smith v. Califano*, 637 F.2d 968, 971 (3d Cir. 1981))).  "Only if the level of
activity were inconsistent with Claimant's claimed limitations would these activities have
any bearing on Claimant's credibility." *Reddick*, 157 F.3d at 722.

       As examples of inconsistent activities and abilities, the ALJ pointed out that Mr.
Mkrtchyan admitted to attending to his personal needs, preparing simple meals,
performing household chores, going out in public for shopping, socializing and watching
television with friends, and visiting his son.  (AR at 25.)  None of these demonstrated
abilities and activities, however, is necessarily inconsistent with Mr. Mkrtchyan's
statements or his claim of disability.  Indeed, Mr. Mkrtchyan has admitted to the above
activities and abilities only with significant qualifications.  For instance, Mr. Mkrtchyan

admits to being able to go shopping and socialize with his friends but he maintains that he

can do so only on "good days" and only for a few hours per day.  (*See, e.g.*, AR at 248

("If I sleep at night I can go out for groceri[e]s, take a walk, have appointments but

[mostly] I can't go out of the house . . . ."); *id.* at 58-60 (stating that he can perform

chores for a few hours on good days, of which he gets "maybe two in a week").  The ALJ

did not address these caveats or explain how, in light of these caveats, Mr. Mkrtchyan's

activities are inconsistent with his claim of disability starting February 1, 2011.[3]

Furthermore, under Ninth Circuit law, the ability to perform basic social and

housekeeping tasks for a few hours per day on a few (presumably random) days per week

does not clearly conflict with a claim of disability.  *See, e.g.*, *Garrison*, 759 F.3d at 1016.

Consequently, the ALJ's determination in this regard was not supported by substantial

evidence.

     In discounting Mr. Mkrtchyan's pre-May 1, 2012, symptom testimony, the ALJ

also noted that Mr. Mkrtchyan "worked after his back surgery at the light level of

exertion, despite his allegation that his condition worsened after the procedure."  (AR at

25.)  This point, however, is of limited relevance.  Mr. Mkrtchyan had back surgery in

January 2010 to remove a tumor (AR at 21), and he did in fact perform light work

---

[3] Furthermore, the court notes that Mr. Mkrtchyan's description of his abilities and activities does not appear to have changed appreciably between early 2011 and the middle of 2012.  Indeed, Mr. Mkrtchyan described his activities in much the same way at his August 2012 hearing before the ALJ as he did in evaluations and documents in early and mid-2011.  (*Compare, e.g.*, AR at 58, 60 *with* AR at 247-48.)  The court finds it difficult to understand how that level of activity and ability could warrant a finding that Mr. Mkrtchyan's symptom testimony was not credible regarding early 2011 even though he apparently maintained a similar level of activity after he was disabled, as the ALJ found, in mid-2012.  (*See* AR at 27.)

1    thereafter (*see* AR at 40-47, 66-69, 255).  Yet he alleges that his disability began only on

2    February 1, 2011, over a year later.  (AR at 18.)  Moreover, Mr. Mkrtchyan's back

3    impairment is "degenerative" (AR at 21 (ALJ's opinion)) and "deteriorating" (AR at 357,

4    366 (Dr. Grinberg's opinion)).  Therefore, the bare fact that he worked "after his back

5    surgery" is not particularly relevant, let alone a clear and convincing reason for finding

6    Mr. Mkrtchyan less than credible.

7         Finally, the ALJ stated that Mr. Mkrtchyan's claim of pre-May 1, 2012, disability

8    is inconsistent with several pieces of medical evidence.  Inconsistencies between a

9    claimant's testimony and medical evidence can serve as a clear and convincing reason for

10   discrediting the claimant's testimony.  *See Regennitter v. Comm'r of Soc. Sec. Admin.*,

11   166 F.3d 1294, 1297 (9th Cir. 1999).  Here, however, none of the ALJ's asserted

12   inconsistencies qualify as clear and convincing reasons supported by substantial

13   evidence.

14        First, the ALJ cites a September 2010 examination and details its findings of

15   "normal muscle bulk, tone and strength throughout, normal gait and station, and

16   symmetical reflexes."  (AR at 24.)  The ALJ further notes that Mr. Mkrtchyan "was able

17   to perform rapidly alternating movements and walk on his heels, toes, and in tandem,"

18   and that an MRI "showed minimal degenerative disc disease with no significant central

19   canal compromise at any level."  (*Id.*)  Although this evidence would certainly be

20   important if Mr. Mkrtchyan alleged disability beginning prior to September 2010,

21   "[m]edical opinions that predate the alleged onset of disability are of limited relevance."

22   *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008).  The

1   September 2010 exam occurred over four months before Mr. Mkrtchyan's alleged onset

2   date.  (*See* AR at 18, 380-87.)  As such, its findings are not clear and convincing evidence

3   that Mr. Mkrtchyan's claims of disability between February 1, 2011, and May 1, 2012,

4   lack credibility.

5          Second, the ALJ observes that examinations by Dr. Grinberg in March, June, and

6   August 2011 revealed negative straight leg raising tests and preserved muscle strength.

7   (AR at 24-25.)  The ALJ also points out that the August 2011 exam noted no "focal

8   neurological deficits."  (AR at 25.)  Implicit in the ALJ's citation to this evidence is the

9   notion that these clinical findings are inconsistent with Mr. Mkrtchyan's symptom

10  testimony.  Yet neither this court nor the ALJ is qualified to make that determination.

11  Because ALJs are as a rule not doctors, "courts have regularly warned ALJs not to

12  attempt to interpret tests results or other raw medical data."  *Worzalla v. Barnhart*, 311 F.

13  Supp. 2d 782, 796 (E.D. Wis. 2004) (citing *Manso-Pizarro v. Sec'y of Health & Human*

14  *Servs.*, 76 F.3d 15, 17 (1st Cir. 1996); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.

15  1985); *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982)).  Furthermore, Dr.

16  Grinberg, who conducted the examinations in question, expressed no doubt regarding Mr.

17  Mkrtchyan's subjective complaints and indeed concluded that Mr. Mkrtchyan was unable

18  to work.  (*See* AR at 337-38, 357-62, 366-69, 395, 405-08); *Regennitter*, 166 F.3d at

19  1297 ("The ALJ noted that Dr. Steven Glusman . . . found in Regennitter no 'severe

20  objective neurological or orthopedic deficit,' but Dr. Glusman did not opine that this was

21  inconsistent with Regennitter's complaints.  In fact, Dr. Glusman found that Regennitter

22  suffered from chronic headaches and chronic, back, neck, shoulder, and leg pain.").

1   Without more, these three exams are not substantial evidence in support of the ALJ's

2   adverse credibility determination.

3          Third, the ALJ cites two points in an April 2011 report from a physical therapist:

4   (1) that the condition of Mr. Mkrtchyan's back is consistent with a muscle strain; and (2)

5   that one of the goals of physical therapy will be to return Mr. Mkrtchyan to work.  (AR at

6   25.)  Neither of these points is inconsistent with Mr. Mkrtchyan's subjective complaints,

7   however.  As to the first point, the ALJ offers no explanation for why a muscle strain is

8   necessarily inconsistent with Mr. Mkrtchyan's testimony and, as described above, the

9   ALJ may not simply assume that inconsistency as a medical fact.[4]  *See Worzalla*, 311 F.

10  Supp. 2d at 796.  Concerning the second point, the court finds that a doctor's initial goal

11  for treatment does not logically undermine the claimant's credibility, particularly where,

12  as here, the treatment proves unsuccessful and the claimant is thereafter found to be

13  disabled as a result of a condition not identified by the doctor setting the goal.  (*See* AR

14  21, 27, 327.)  Accordingly, these reasons for discounting the Mr. Mkrtchyan's credibility

15  are likewise insufficient.

16         Lastly, the ALJ points to a February 2012 exam that "revealed a positive straight

17  leg test on the left and restricted spinal range of motion as well as mild left lower

18

19

20          [4] Moreover, although the ALJ describes the physical therapist's report as concluding that
    Mr. Mkrtchyan's pain was "caused by" a muscular strain (AR at 25), the physical therapist's
    report states only that the pain is "consistent with" a muscular strain (AR at 327).  The ALJ also

21  fails to consider that the physical therapist's statement regarding a strain may be of dubious
    reliability in light of the ALJ's finding that Mr. Mkrtchyan had the severe impairment of lumbar
    degenerative disc disease as of February 1, 2011, and was disabled as a result of that impairment

22  by at least May 1, 2012.  (*See* AR at 21, 27.)

ORDER- 13

1    extremity weakness." (AR at 25.) The unstated assumption again appears to be that such

2    findings are inconsistent with Mr. Mkrtchyan's claim of disability. As above, the court

3    notes that the ALJ is not qualified to interpret these clinical findings and has not

4    explained how they contradict any particular statement by Mr. Mkrtchyan. *See Worzalla*,

5    311 F. Supp. 2d at 796.

6           Furthermore, an additional consideration undermines the ALJ's reasoning—

7    namely, the ALJ's inconsistent treatment of similar clinical findings. As described

8    above, the ALJ lists preserved muscle strength and negative straight leg raising tests in

9    February, June, and August 2011 as medical evidence inconsistent with Mr. Mkrtchyan's

10   claims. (*See* AR at 25.) The February 2012 exam yielded different results on both

11   accounts—a positive left leg test and mild weakness in the left leg—yet the ALJ cites the

12   February 2012 exam as supporting the same conclusion as the previous exams. (*Id.*) In

13   addition, the ALJ cites as evidence in support of the ultimate disability finding a May

14   2012 exam that revealed only "stable gait and pull motor strength in all major muscle

15   groups except for the left leg." (AR at 27.) The court is left to wonder how the February,

16   June, and August 2011 exams and the February 2012 exam all contradict Mr.

17   Mkrtchyan's claims, while the May 2012 exam supports those claims. This unexplained

18   inconsistency in the ALJ's reasoning further undercuts the notion that the medical

19   evidence is inconsistent with Mr. Mkrtchyan's claims.[5]

20   _____

21          [5] In addition, the court rejects the Commissioner's argument that the ALJ properly
     discounted Mr. Mkrtchyan's credibility because Mr. Mkrtchyan did not obtain significant
22   treatment for his left knee impairment. (Resp. at 7 (citing AR at 25).) Lack of treatment for an

1    In sum, the court finds that the ALJ erred in discounting Mr. Mkrtchyan's

2  credibility because the ALJ failed to justify that decision with clear and convincing

3  reasons supported by substantial evidence.

4    2.  Dr. Grinberg's opinions

5    Mr. Mkrtchyan next contends that the ALJ improperly evaluated the opinions of

6  his treating physician, Dr. Grinberg.  The Commissioner's own rules dictate that ALJs

7  "must always carefully consider medical source opinions about any issue, including

8  opinions about issues that are reserved to the commissioner."  SSR 96-5p, 1996 WL

9  374183, at *2.  An ALJ is not bound by the medical opinion of a treating physician,

10  however, on the ultimate question of disability.  *Reddick*, 157 F.3d at 725.  In conjunction

11  with the relevant regulations, the Ninth Circuit has "developed standards that guide [the

12  court's] analysis of an ALJ's weighing of medical evidence."  *Garrison*, 759 F.3d at 1012

13  (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

14    Ordinarily, the opinion of a treating physician is entitled to greater weight than

15  that of an examining physician, and the opinion of an examining physician is likewise

16  entitled to greater weight than that of a nonexamining physician.  *Id.*  "[A]n ALJ errs

17
18  allegedly disabling impairment can be a clear and convincing reason for discounting a claimant's
    symptom testimony.  *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) ("Meanel's claim
19  that she experienced pain approaching the highest level imaginable was inconsistent with the
    'minimal, conservative treatment' she received.").  Nevertheless, although Mr. Mkrtchyan
20  complained of pain in his knee to Dr. Grinberg and at the hearing before the ALJ (*see* AR at 52,
    55, 391), he has not alleged that his knee pain was disabling.  He has mentioned it among his
    other sources of pain when describing his overall condition and limitations (*see, e.g.*, AR at 56,
21  260), but does not appear to have stated that his knee pain alone is particularly severe.  The
    Commissioner and the ALJ have not demonstrated that the absence of significant knee-related
    treatment is inconsistent with Mr. Mkrtchyan's statements.  Accordingly, the treatment of Mr.
22  Mkrtchyan's knee is not a valid reason for discounting his credibility.

1    when he rejects a medical opinion or assigns it little weight while doing nothing more

2    than ignoring it, asserting without explanation that another medical opinion is more

3    persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis

4    for his conclusions." *Id.* at 1012-13.  "To reject an uncontradicted opinion of a treating

5    or examining doctor, the ALJ must provide 'clear and convincing reasons that are

6    supported by substantial evidence.'"  *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir.

7    2014) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2008)).

8           Here, Dr. Grinberg's opinions are contradicted by some of the other medical

9    sources.  (*See* AR at 24, 26.)  Even if a treating doctor's opinion is contradicted, however,

10   "an ALJ may only reject it by providing specific and legitimate reasons that are supported

11   by substantial evidence."  *Garrison*, 759 F.3d at 1012 (quoting *Ryan*, 528 F.3d at 1198).

12   An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and

13   thorough summary of the facts and conflicting evidence, stating his interpretation thereof,

14   and making findings."  *Id.* (quoting *Reddick*, 157 F.3d at 725).  "The ALJ must do more

15   than state conclusions.  He must set forth his own interpretations and explain why they,

16   rather than the doctors', are correct."  *Id.* (quoting *Reddick*, 157 F.3d at 725).  As will be

17   discussed in more detail below, the court concludes that the ALJ failed to satisfy this

18   standard when evaluating Dr. Grinberg's opinions.

19          The ALJ noted that Dr. Grinberg treated Mr. Mkrtchyan multiple times over the

20   course of 2011.  (*See* AR at 26.)  In February 2011, Dr. Grinberg twice examined Mr.

21   Mkrtchyan and opined that he was not able to work and should take two weeks off from

22   work and then return "for recheck."  (AR at 340-41, 356 (cited by AR at 26).)  In March

1  2011, Dr. Grinberg evaluated Mr. Mkrtchyan two more times, writing that Mr.

2  Mkrtchyan was "presently not able work" and should take three months off from work.

3  (AR at 337-38 (cited by AR at 26); *see also* AR at 366-69.)  In June 2011, Dr. Grinberg

4  again assessed Mr. Mkrtchyan and concluded that he should take an additional six

5  months off from work.  (AR at 357-60 (cited by AR at 26).)  In March and June 2011

6  evaluations, Dr. Grinberg noted that Mr. Mkrtchyan's condition was deteriorating.  (AR

7  at 357, 366.)  Dr. Grinberg saw Mr. Mkrtchyan once more in October 2011, at which

8  point he determined that Mr. Mkrtchyan could not work and should take at least another

9  12 months off from work.  (*See* AR at 395, 405-08 (cited by AR at 26).)

10      Although Dr. Grinberg was a treating physician, the ALJ gave his opinions "little

11  weight" for several reasons.  (AR at 26.)  First, the ALJ observed that "the question of

12  disability is reserved for the commissioner, and Dr. Grinberg's opinion does not consider

13  the Social Security Administration's standards for disability."  (*Id.*)  The ALJ is of course

14  correct that the question of disability is reserved for the Commissioner, yet that fact

15  dictates only that the ALJ is not bound by Dr. Grinberg's opinion on the issue of

16  disability—it is not a reason for rejecting Dr. Grinberg's opinion.  *See Reddick*, 157 F.3d

17  at 725.  Indeed, the Ninth Circuit has made clear that the standard for rejecting treating

18  physicians' testimony does not change appreciably depending on whether treating

19  physicians express their views as medical opinions or as opinions on the ultimate issue of

20  disability.  *See id.*  Thus, "[a] treating physician's opinion on disability, even if

21  controverted, can be rejected only with specific and legitimate reasons supported by

22  substantial evidence in the record."  *Id.* (citing *Lester*, 81 F.3d at 830).

1       Next, the ALJ stated that Dr. Grinberg's opinions are inconsistent, as Dr. Grinberg

2  "opined that the claimant should be off work for two weeks in February 2011, then

3  opined that he should have a three-month leave of absence in March 2011, then stated

4  that he is disabled [in October]."  (AR at 26.)  The court, however, fails to see

5  inconsistency in the fact that as time went by Dr. Grinberg recommended increasing

6  amounts of time off of work.  Instead, Dr. Grinberg's opinions seem consistent with a

7  physician taking a cautious approach—evaluating his patient, recommending time off,

8  meeting with the patient around the end of the recommended time away from work,

9  evaluating the patient again, and upon failing to observe any improvement,

10  recommending an increased period of time off.  (*See* AR at 337-38, 340-41, 356-60, 366-

11  69, 395, 405-08.)  Moreover, Dr. Grinberg noted on multiple occasions that Mr.

12  Mkrtchyan's condition was deteriorating (AR at 357, 366), a finding that appears

13  consistent with the need for increased amounts of time away from work.  Accordingly,

14  the court finds that the ALJ's criticism regarding the consistency of Dr. Grinberg's

15  recommendations is not supported by substantial evidence.

16       In addition, the ALJ criticized Dr. Grinberg's opinions as being "inconsistent with

17  his examination findings [and with] the claimant's demonstrated abilities."  (AR at 26.)

18  The ALJ did not elaborate on these points; therefore, as an initial matter, the ALJ failed

19  to meet the Ninth Circuit's substantial evidence standard.  *See Garrison*, 759 F.3d at

20  1012 (providing that the ALJ can satisfy the substantial evidence requirement by "setting

21  out a detailed and thorough summary of the facts and conflicting evidence, stating his

22  interpretation thereof, and making findings").  Moreover, even if the court refers back to

1   earlier portions of the ALJ's opinion to determine the ALJ's reasoning, the ALJ still has

2   failed to adequately support his conclusions.   For instance, Dr. Grinberg performed the

3   previously-noted straight leg tests on which the ALJ relied to reject Mr. Mkrtchyan's

4   symptom testimony.  (*See* AR at 25 (citing AR at 338, 361-62, 392).)  The ALJ may have

5   had those tests in mind when he rejected Dr. Grinberg's opinions as being inconsistent

6   with his examination findings.  Yet as described above, the ALJ is not qualified to

7   interpret medical test results, and he has not explained his basis for concluding that these

8   test results are so inconsistent with Dr. Grinberg's opinion as to undermine Dr.

9   Grinberg's credibility.  *See Worzalla*, 311 F. Supp. 2d at 796; *supra* Part III.B.1.

10          Likewise, the court has already rejected the ALJ's reliance on Mr. Mkrtchyan's

11   demonstrated activities and abilities, and that rejection applies equally here.  *See supra*

12   Part III.B.1.  Dr. Grinberg's opinions, like Mr. Mkrtchyan's subjective complaints, are

13   not necessarily inconsistent with Mr. Mkrtchyan's demonstrated activities and abilities

14   under Ninth Circuit law, *see Garrison*, 759 F.3d at 1016, and as noted above, the ALJ has

15   failed to explain his finding of inconsistency.  As such, the court concludes that the ALJ

16   failed to provide substantial evidence in support his contention that Dr. Grinberg's

17   opinions are inconsistent with his findings or with Mr. Mkrtchyan's demonstrated

18   activities and abilities.  The court therefore finds that the ALJ erred in his evaluation of

19   Dr. Grinberg's opinions.

20   **C.    Remedy**

21          Having found that the ALJ improperly evaluated Mr. Mkrtchyan's credibility and

22   the opinions of Dr. Grinberg, the court must determine the appropriate remedy.  A court

1  will not reverse the Commissioner's decision for harmless error, which exists when it is

2  "clear from the record that an ALJ's error was 'inconsequential to the ultimate

3  nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir.

4  2006) (quoting *Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also Burch*,

5  400 F.3d at 679.  Here, however, the court finds that the ALJ's errors were not harmless.

6  Mr. Mkrtchyan's pre-May 1, 2012, symptom testimony and Dr. Grinberg's opinions, if

7  credited, add substantial weight to Mr. Mkrtchyan's claim that he was disabled as of

8  February 1, 2011.  The court cannot conclude, therefore, that rejecting that evidence

9  without a proper legal basis was inconsequential to the ALJ's determination that Mr.

10  Mkrtchyan was not disabled until May 1, 2012.  *See Robbins*, 466 F.3d at 885.  In

11  addition, the court notes that the Commissioner does not argue that any of the errors

12  alleged were harmless.  (*See* Resp.)

13       Because the ALJ's errors were not harmless, the ALJ's decision regarding the

14  onset date of Mr. Mkrtchyan's disability is not supported by substantial evidence, and the

15  court must therefore reverse that decision.  *See Stout*, 454 F.3d at 1056-57.  The choice of

16  whether to reverse and remand for further administrative proceedings, or to reverse and

17  simply award benefits, is within the discretion of the court.  *See Harman v. Apfel*, 211

18  F.3d 1172, 1178 (9th Cir. 2000).  Mr. Mkrtchyan does not request an immediate award

19  of benefits here; rather he requests remand of the case for further administrative

20  proceedings on the issue of onset date.  (Op. Brief at 2, 16; Reply at 12.)  The court

21  agrees that remand for further proceedings is appropriate because review of the record as

22  a whole leaves the court in doubt regarding whether Mr. Mkrtchyan was in fact disabled

1   as of February 1, 2011.  *See Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).  The

2   court therefore remands the case for further administrative proceedings regarding when

3   Mr. Mkrtchyan became disabled.  *See* 28 U.S.C. §§ 405(g), 1383(c)(3).

4   **IV.    CONCLUSION**

5         For on the foregoing reasons, the court REVERSES the decision of the

6   Commissioner that Mr. Mkrtchyan was not disabled until May 1, 2012, and REMANDS

7   this case to the Commissioner for further administrative proceedings consistent with this

8   order.

9         Dated this 5th day of May, 2015.

10

11

12                                          

13                                   JAMES L. ROBART
United States District Judge

14

15

16

17

18

19

20

21

22

ORDER- 21